## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CONTINENTAL WESTERN INSURANCE
COMPANY, an insurance corporation,

           *Plaintiff*,

 vs.                                  Case No. 07-1201-EFM

DONNA ARD et al.,

           *Defendants.*

## MEMORANDUM AND ORDER

This matter now comes before the Court on Plaintiff Continental Western Insurance Company's ("CWIC") Motion for Summary Judgment (Doc. 119). The Court has thoroughly reviewed the record provided and the applicable law, and for the reasons stated below, the Court grants Plaintiff's motion.

## I. Background

CWIC filed this interpleader action pursuant to 28 U.S.C. § 1335. Defendant's assert that CWIC's insured's negligence in constructing a deck for a residence was responsible for the deck's collapse during a social event on May 5, 2007, contributing to the injuries and damages of Defendants. CWIC contends that its liability limit under the insurance contract for this incident for all claims is $500,000. Defendants, however, claim that the insurance policy's liability limit is $1,000,000.

## II.  Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[2]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim.[3]  In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[4]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[5]  The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[6]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[7]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence

---

[1]Fed. R. Civ. P. 56(c).

[2]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[3]*Id.*

[4]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[6]*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[7]*Celotex*, 477 U.S. at 323.

supporting its allegations.[8]   The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[9]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[10]

### III.  Analysis

Because this Court has diversity jurisdiction over this case, we apply the substantive law of the forum state.[11]   Under Kansas law, the "language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties."[12]   The terms of an insurance policy determine the risks insured against under that policy.[13]   The construction and effect of an insurance contract is a question of law to be decided by the court.[14]

Recently, the Kansas Supreme Court succinctly summarized the rules governing the interpretation of insurance contracts:

> If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used. An insurance policy is ambiguous when it contains language of doubtful or conflicting meaning based on a reasonable construction of the policy's language. An ambiguity does not exist merely because the parties disagree on the

---

[8]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[9]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[10]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[11]*Vakas v. Transamerica Occidental Life Ins. Co.*, 242 F.R.D. 589, 596 (D. Kan. 2006).

[12]*Goforth v. Franklin Life Ins. Co.*, 202 Kan. 413, 417, 449 P.2d 477, 481 (1969).

[13]*Isaac v. Reliance Ins. Co .*, 201 Kan. 288, 291, 440 P.2d 600, 603 (1968).

[14]*Warner v. Stover*, 283 Kan. 453, 456, 153 P.3d 1245, 1247 (2007).

interpretation of the language.

To determine whether an insurance contract is ambiguous, the court must not consider what the insurer intends the language to mean. Instead, the court must view the language as to what a reasonably prudent insured would understand the language to mean. This does not mean that the policy should be construed according to the insured's uninformed expectations of the policy's coverage.

Courts should not strain to find an ambiguity when common sense shows there is none. The court must consider the terms of an insurance policy as a whole, without fragmenting the various provisions and endorsements.

As a general rule, exceptions, limitations, and exclusions to insurance policies are narrowly construed. The insurer assumes the duty to define limitations to an insured's coverage in clear and explicit terms. To restrict or limit coverage, an insurer must use clear and unambiguous language. Otherwise, the insurance policy will be construed in favor of the insured.[15]

The only issue before the Court is whether, based on the facts of this case, the insurance policy limits payment to the Each Occurrence Limit of $500,000 or the Products-Completed Operations Aggregate Limit of $1,000,000.  The parties agree that all of Defendants' claims stem from the one incident that occurred on May 5, 2007.  However, their dispute focuses on which limit is implicated by the term "a person," as used in the definition of "bodily injury."[16]

Defendants position rests on the argument that the phrase "a person," as used in the definition of bodily injury, links the described injury to a single person rather than simply describing *what* must sustain the injury.  Defendants conclude that by inserting the definition of "bodily injury" into subsection 5 of the Limits of Insurance,[17] it becomes apparent that the coverage available as a

---

[15]*Marshall v. Kan. Med. Mut. Ins. Co.*, 276 Kan. 97, 111-12, 73 P .3d 120, 130 (2003) (internal citations omitted).

[16]"Bodily Injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Doc. 1-2, p. 33 (Sec. V(3)).

[17]After inserting the bodily injury definition, subsection 5 would read in part: "the Each Occurrence Limit is the most we will pay for the sum of . . . damages under Coverage A . . . because of all bodily injury, sickness, or disease sustained by a person, including death resulting from these at any time . . . arising out of any one

result of injury to any one person is $500,000 for any one occurrence, but when there are multiple claimants of that same occurrence, the aggregate limit of $1,000,000 would then apply.

The Court must construe the insurance policy as a reasonably prudent insured would understand its language, considering the terms of the policy as a whole and not as fragments taken out of context.  The Court must also give terms their plain meaning unless those terms are specifically and unambiguously defined within the policy.[18]

Section I, Coverage A of the insurance policy identifies CWIC's bodily injury and property damage liability.  The provision provides that CWIC "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. . . . But[,] the amount we will pay for damages is limited as described in Section III - Limits of Insurance[.]"[19]

The Limits of Insurance section addresses the maximum amount that CWIC will pay pursuant to the policy.  This section states, in relevant part:

> 1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay *regardless of the number of*:
>      a. Insureds;
>      b. *Claims made* or "suits" brought; or
>      c. *Persons* or organizations *making claims* or bringing "suits".
>
> 2. The General Aggregate Limit is the most we will pay for the sum of:
>      a. Medical expenses under Coverage C;
>      b. Damages under Coverage A, *except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"*; and
>      c. Damages under Coverage B.

---

'occurrence.'"

[18]*See Marshall*, 276 Kan. at 111-12, 73 P .3d at 130.

[19]Doc. 1-2, p. 23 (Sec. I, Coverage A (1)(a)).

3. The Products-Completed Operations Aggregate Limit [$1,000,000] is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".[20]

. . .

5. Subject to 2. or 3. above, whichever applies, *the Each Occurrence Limit* [$500,000] *is the most we will pay for the sum of*:
      a. *Damages under Coverage A*; and
      b. Medical expenses under Coverage C
*because of all "bodily injury"* and "property damage" *arising out of any one "occurrence"*.[21]

CWIC's liability under the insurance contract is clearly limited by the Limits of Insurance provision, as plainly set forth in Section I, Coverage A discussing liability for damages.  Subsection 5 of the Limits of Insurance section then unambiguously limits liability with regard to each occurrence.  Both CWIC and Defendants agree that this incident involves only one occurrence under the terms of this policy.  This subsection provides that the "Each Occurrence Limit," identified as $500,000 in the policy's declaration, is the most it will pay for all bodily injury from one occurrence.  This Court cannot construe "all 'bodily injury,'" as Defendants suggest, to mean bodily injury occurring only to one person for each occurrence.  Instead, the only reasonable interpretation is that the policy is

---

[20]"Products-completed operations hazard"
      a. Includes all "bodily injury' and "property damage"occurring away from premises you own or rent and arising out of "your product" or "your work" except:
            . . .

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
      (a) When all of the work called for in your contract has been completed.
      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.  Doc. 1-2, p.36 (Sec. V(16)).

      "Your work" means "[w]ork or operations performed by you or on your behalf. . . ."  Doc. 1-2, p. 37 (Sec. V(22)(a)(1)).

[21]Doc. 1-2, pp. 31-32 (Sec. III) (emphasis added).

limited to paying the Each Occurrence Limit for all injuries sustained by all individuals resulting from one occurrence.

Defendants have provided the Court  no authority in support of their argument, nor has this Court found any case law on point within the Tenth Circuit, Kansas District, or State of Kansas interpreting these provisions.  CICW, however, has provided analogous cases from the United States District Court for the District of Columbia and from the Appellate Court of Illinois.  While neither case is completely on point factually, each dealt with a party challenging the meaning of the phrase "by a person" in the definition of "bodily injury" within an insurance contract, the same as Defendants are arguing in this case.  The Court recognizes that these opinions are not binding authority on this Court; however, after reviewing each case, we find their reasoning to be both instructive and sound.

In *Greaves v. State Farm Insurance Company*,[22] the plaintiffs argued that the phrase "by a person" within the definition of "bodily injury"[23] supports the argument that even though a single cause is responsible for the injuries sustained, each person suffering injury essentially suffers a separate occurrence, mandating that the aggregate policy limit be applied.  The court, not convinced by the plaintiffs' arguments, interpreted "by a person" as a qualitative phrase in place simply to clarify that the policy was to protect injuries to the human body.  In support of this finding, the court reasoned that other policy provisions employed quantitative language where the policy was meant to refer to "one person" rather than to a "human body."[24]  As an example, the court pointed to the per-occurrence limitation for medical expenses, which provided that "the most we will pay for all

---

[22]984 F. Supp. 12 (D.D.C. 1997).

[23]The definition of "bodily injury" in *Greaves* is identical to that in the instant action.

[24]*Greaves*, 984 F. Supp. at 16.

medical expenses because of bodily injury sustained *by any one person* is [$5,000]."[25]

CWIC also cites to *Scottsdale Insurance Company v. Robertson*[26] in support of its position. *Robertson* also dealt with defendants challenging the "a person" phrase in the "bodily injury" definition, again similar to Defendants' asserted position in the instant case.  Further, the *Robertson* defendants asserted a strikingly similar argument as in the instant action that, upon inserting the "bodily injury" definition into the "Each Occurrence Limit," it becomes apparent that "multiple occurrence limits must apply to all bodily injury sustained by multiple persons."[27]  The court was also unpersuaded for reasons similar to those discussed in *Greaves.*

The language employed within the relevant provisions of the CWIC policy and the arguments propounded by Defendants are practically identical to those discussed in the above cases. The CWIC policy defines "bodily injury" as "bodily injury . . . sustained *by a person.*"  Defendants argue that the phrase "a person," as used within this definition,  should be interpreted quantitatively, as meaning a single person, rather than as a qualitative phrase (i.e., a human body).  Also similar with the policies discussed in *Greaves*, the CWIC policy specifically employs language of a quantitative nature in setting the Medical Expense Limit at $5,000 *for any one person*.[28]  The policy once again supports the Court's interpretation by distinguishing between the qualitative and quantitative use of "person" in describing the methods for applying a deductible.  If the deductible was due on a per claim basis, a deductible would apply "to all damages sustained *by any one*

---

[25]*Id.* (emphasis added).

[26]338 Ill. App. 3d 397, 788 N.E. 2d 279 (2003).

[27]*Robertson*, 338 Ill. App. at 401, 788 N.E. 2d at 282.

[28]Doc. 1-2, p. 15 (emphasis added).

-8-

*person*," rather than applying to "a person."[29]  In addition, when describing the payment of deductible based on a "per occurrence" basis, damages under the Bodily Injury Liability Coverage applies to "all damages because of 'bodily injury'. . . as the result of any one 'occurrence', regardless of the *number of persons* . . . who sustain damages because of that 'occurrence'."[30]  Once again, this provision refers to a number of persons rather than merely "a person."  Moreover, applying Defendants reasoning to the latter would also work to create a confusion by referring to "bodily injury to, as Defendants suggest, 'a single person,' . . . regardless of the *number of persons* . . . ."  A plain reading of these provisions simply cannot support Defendants' interpretation.

The Court is, therefore, unpersuaded by Defendants' arguments.  Adopting language from *Greaves*, the "precise numerical limitation [employed elsewhere in the CWIC policy] stands in stark contrast to the indefinite article 'a person.'  To sanction [Defendants'] interpretation of the phrase 'a person' would create an awkward internal tension within the policy by suggesting that the policy's drafters used the imprecise "a person" and the specific "any one person" synonymously."[31]  Thus, in construing the insurance policy in the light of what a reasonably prudent insured would understand the language to mean, the Court finds no ambiguity in the policy's language limiting CWIC's liability for all claimants of one occurrence to the "Each Occurrence Limit" of $500,000.

Accordingly,

**IT IS THEREFORE ORDERED** that the policy's liability limit for the May 5, 2007 occurrence is $500,000, and therefore, Plaintiff Continental Western Insurance Company's Motion for Summary Judgment (Doc. 119) is hereby granted.

---

[29]Doc. 1-2, p. 17 (emphasis added).

[30]Doc. 1-2, p. 18.

[31]*Greaves*, 984 F. Supp. at 16.

**IT IS SO ORDERED.**

Dated this 20th day of February, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE